IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN TODD LANNI,

                    Petitioner,

          v.                              CASE NO. 11-3066-RDR

LISA HOLLINGSWORTH,
Warden, USP-Leavenworth,
et al.,

                    Respondents.

## MEMORANDUM AND ORDER

Mr. Lanni, an inmate of the USP-Leavenworth, filed this action as a habeas corpus petition pursuant to 28 U.S.C. § 2241.  He challenges the decision that his placement in a "Residential Re-entry Center" (RRC) shall be for 180 days, and seeks an immediate transfer to a particular community facility.  The court finds that Mr. Lanni's claims are moot leaving this court without jurisdiction and that, in any event, he has failed to prove exhaustion of administrative remedies and failed to state a claim for relief under § 2241.  Accordingly, this action is dismissed, without prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Lanni was convicted on May 19, 2010, of wire fraud and sentenced to 30 months in prison.  He alleged that he had a "current scheduled release date" of 9/16/2012 and a "conditional 3621(e) release date of 3/16/2012."  Petition (Doc. 1) Attachs. at 42.  He does not exhibit a copy of the judgment and commitment order in his criminal case, but alleges that the sentencing judge requested his confinement in the prison facility closest to Houston because of his three small children and stated in the order "institution

recommendation Bastrop Texas."

Petitioner attached numerous papers to his original Petition that reveal the following with regard to the decision on his RRC placement.  A "Program Review" summary dated November 6, 2010, indicated that in August 2010 a review under the Second Chance Act, 18 U.S.C. § 3624(c)(SCA), of his placement in an RRC was set for completion by 3/2011.  Id. at 7.  In the November review, Lanni was advised to "complete an obtainable release plan by 9/20/11 . . . and maintain clear conduct to be eligible for RRC placement by 9/2011." This record further indicated that the SCA review was completed on November 5, 2010, that Lanni had "not provided any extraordinary or compelling re-entry needs," and that he was recommended for "180-days RRC placement due to RDAP participation."  Thus, Lanni became aware in early November 2010 of this decision and apparently voiced opposition.

In Lanni's "Inmate Request to Staff" dated November 8, 2010, Lanni cited two regulations on RRC placement and questioned the term "maximum" as used therein.  Id. at 12.  The disposition is not legible but appears to provide that the question posed was forwarded to the camp director on the date received.  Id.  In another "Inmate Request to Staff" dated November 29, 2010, Lanni generally requested reconsideration "of the 11/6/10 program review."  Id. at 11.  No specific grounds for reconsideration are listed on this request. Case Manager Puckett responded on November 30, 2011:

> Relocation - does not have a release residence in area.
> 2nd Chance - Request information to make request.  Will
> provide (date given).  -Will work on release plan.  Need
> telephone number to complete.

Id.

Lanni's Program Review dated January 28, 2011, indicated he was again advised to "complete and obtain release plan by 9/2011." Id. at 8. This record reflected that the SCA review had been completed on November 6, 2011, and again that the recommendation was for 180-days because Lanni had not provided any extraordinary or compelling re-entry needs. It was noted that the inmate had "requested reconsideration due to children and family medical issues," and that an SCA review form had been prepared for the camp administrator, which was awaiting response. Id.

Petitioner exhibits a document prepared by him, which he entitled "Second Chance Act - Release Plan," and had written upon: "gave to Puckett 12/9/201(last number not legible but assumed to be 0)." Although Mr. Lanni called this a "release plan," it mainly contained his self-serving interpretations of various statutes, regulations and policies. He requested placement in a "special" re-entry program called the "Transitional Service Program (TSP)" rather than the "standard" community correction program. He argued that he was entitled to go directly to a community program after he completed the "unit-based phase" of the RDAP program. He also argued that officials at the USPL were relying on outdated law to "categorically deny" any RRC placement beyond 180-days. At the close of this 8-page brief, he stated that granting his request would provide "the best treatment for his drug abuse issue" and allow him to "re-unite with his family and enhance his family relationships." Id. at 13-20. Mr. Lanni also attached several personal affidavits to his original petition, and in one (Id. at 23) refers to this "plan" as his "informal administrative remedy request" submitted to Puckett on 12/9/10; however, he does not

exhibit any grievance form that was submitted along with this "plan". He alleges that after some time with no response he was asked by camp director Sheldrake to resubmit his "plan", which he had stored on a work computer, but he had difficulty gaining access to the computer after he was fired and it took ten days to recreate the plan. Lanni submitted his recreated "plan" to counselor Wilson on January 14, 2011, id. at 23-24, and exhibits the accompanying BP-8 or "Administrative Remedy - Informal Resolution" also dated January 14, 2011. Id. at 28. Therein, he requested "immediate" and "advanced" release planning and consideration for the maximum allowable time of RRC placement, individual consideration using the five factors required by 18 U.S.C. 3621(b), and a personal, informal interview regarding the assessment with advance notice of any unfavorable factors. He also requested immediate placement in TSP Community Confinement upon his completion of the "unit-based phase."[1] Petitioner exhibits "Response to Inmate Request" dated March 8, 2011. This was described as the "response to (his) Inmate Request to Staff dated December 9, 2010, and (his) Administrative Remedy Informal Resolution request dated January 14, 2011" requesting "consideration for additional time in an RRC." Id. at 50. This response provided in pertinent part:

> On November 5, 2010, a team review was conducted, at which time you had also requested additional RRC placement . . . . Your request was based on numerous factors, to include: the poor health of your elderly parents, psychological issues with your two sons, your recent diagnoses for Melanoma Cancer and your claim that your Sentencing Judgment is invalid. At that time your overall

---

[1]     Petitioner exhibits his attempts to raise the claims presented in his January 14, 2011, grievance to a higher level including a BP-9 dated January 21, 2011. Id. at 31. This appeal was rejected and returned because he had not provided evidence of his attempt at informal resolution and another reason.

> re-entry needs were . . . evaluated, considering the five
> factors in § 3621(b), and it was determined that a 180 day
> placement would be sufficient to assist you with your
> release needs.

Id.  The response clearly specified each of the factors that had been considered and discussed the findings regarding each factor. Findings included a lack of available space in the Texas area for a lengthy RRC placement; that Lanni's fraud conviction had involved multiple transactions and a number of victims; that his sentence of less than 3 years and prior custody credit had resulted in a very short period of actual incarceration, which diminished his need for significant RRC placement to assist in his transition back to the community; and that his good institutional history including his program participation and good work performance, immediate placement at the camp facility, and close family ties indicated less of a need for transitional RRC placement.  The response also indicated the sentencing "court's desire" that he be "designated to a facility as close to Bastrop, Texas as possible" was considered.  The issues Lanni had raised were found not to provide "a justification for additional RRC placement."  Id. at 50-51.

Mr. Lanni filed this action in federal court on March 21, 2011. The court screened the pleading, and issued an order requiring that he satisfy the filing fee prerequisite.  The court also discussed deficiencies it found in the petition, including that petitioner had not shown exhaustion on the claims presented.  Petitioner was ordered to show cause why this action should not be dismissed for the reasons stated including his failure to state grounds for relief under § 2241.

Days after entry of the screening order, Mr. Lanni filed a

duplicate (Doc. 5) of his initial pleading.[2]   He next filed a document entitled "Petitioner's First Ammended (sic) §2241 and Answer to April 8th, 2011 Order."[3]   In his First Amended Petition, Mr. Lanni stated that he amends his original petition to "include the underlying constitutional claim that was subject of the motion; however, an amended petition completely supercedes the original.  He later filed a "Supplemental Memorandum" (Doc. 8) and a Motion for Oral Argument (Doc. 9).

Mr. Lanni seeks the following relief: his "immediate referral to the RRC center" in Houston; and his "immediate transfer to Bastrop Texas Camp" to comply with the sentencing court order.  He also seeks an order requiring the BOP "to re-evaluate his RRC placement" and "nearer release transfer request" using only factors "consistent with statute, rule, and law."  In addition, he seeks "a reasonable reimbursement of expenses and legal work" for this case.

The inmate locator on the U.S. Bureau of Prisons (BOP) website, bop.gov, indicates that Mr. Lanni has been transferred to the "CCM Houston," a community corrections facility, and has a current release date of March 18, 2012.  Mr. Lanni has improperly failed to

---

[2]      The court does not consider this a response to its screening order because it is nothing other than a duplicate of the initial pleading that was already screened.  The clerk docketed the duplicate pleading as petitioner's Motion for Waive of Exhaustion, Enforcement of Law and Sanctions (Doc. 5) apparently because of these words in the title.  In its screening order, the court considered petitioner's motion for a waiver of the exhaustion prerequisite and for remedies including the imposition of sanctions, and found that Mr. Lanni had not shown that he had even attempted to exhaust on the claim actually presented, which was that he was denied access to the courts because prison administrative remedies had been rendered unavailable.  The court expressly denies the relief requested in this duplicate pleading (Doc. 5) for the reasons stated in its screening order and herein, including that petitioner does not show that he has exhausted or that he is entitled to any relief under § 2241.

[3]      The clerk duplicated this document and entered the original as Mr. Lanni's First Amended Petition (Doc. 6) and the copy as his "Response" (Doc. 7) to the screening order.

notify the court of this change of address.

## LEGAL STANDARDS

A district court is only authorized to issue a writ of habeas corpus when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As Mr. Lanni seems to be well-aware and was informed in the screening order, exhaustion of all available administrative remedies is a prerequisite to a federal prison inmate seeking judicial review of administrative action by the BOP and relief pursuant to § 2241. In order to have fully exhausted, petitioner must have properly presented the same claims as are presented in his federal habeas corpus petition on all levels of the administrative grievance process.[4]   There are "limited exceptions" to the exhaustion prerequisite, including "a narrow futility exception." See Ciocchetti v. Wiley, 358 Fed.Appx. 20, 24 (10th Cir. 2009)(unpublished[5])(citing see Fairchild v. Workman, 579 F.3d 1134, 1155 (10th Cir. 2009)).   Such exceptions "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." See Fuller v.

---

[4]   The BOP provides a four-level Administrative Remedy Program for inmates to obtain "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. First, an inmate must attempt informally to resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If the concern is not informally resolved, an inmate may file an appeal to the Warden. 28 C.F.R. § 542.14. Next, an inmate may appeal an adverse decision to the Regional Director. 28 C.F.R. § 542.15(a). Finally, the inmate may appeal to the BOP's Central Office. Id. No administrative remedy appeal is considered fully and finally exhausted until it has been denied by the Central Office. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[5]   Unpublished opinions are not cited herein as binding precedent, but for persuasive value only in accord with Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

Rich, 11 F.3d 61, 62 (5th Cir. 1994)(citations omitted).

In the context of challenges to the length of a prisoner's placement in an RRC, the relief which may be granted is an order directing the BOP to perform the individualized consideration required by federal law, and not an order directing that the prisoner be placed in a RRC.  See Wedelstedt v. Wiley, 477 F.3d 1160, 1168 (10th Cir. 2007); Garza v. Davis, 596 F.3d 1198, 1202-03 (10th Cir. 2010); see also Kyles v. Chester, 2011 WL 855801, 83 (D.Kan. Mar. 9, 2011); Brown v. Rios, 2009 WL 5030768, * 8 (D.Minn. Dec. 14, 2009)("All that the Petitioner is entitled to, under [18 U.S.C. § 3624(c)] is an individualized evaluation of the appropriate RRC placement . . . in light of the specific factors outlined in Title 18 U.S.C. § 3621(b)."); Safa v. Phillips, 2008 WL 2275409, *1 (N.D.W.Va. June 2, 2008)("Inmates are not entitled to six months CCC placement, rather they are entitled to have their placement considered in accordance with the five factors enumerated in 18 U.S.C. § 3621(b)."). Two statutes govern the BOP's authority to place a prisoner in an RRC during the final months of his or her sentence, namely, 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Generally, § 3621 allows the BOP to designate the place of imprisonment, while § 3624 allows a prisoner preparing for reentry to spend the end of his or her term in an RRC. The BOP is vested with broad authority to determine the length of a prisoner's placement in an RRC, see § 3624(c). Pursuant to § 3621(b), the BOP has broad discretion to designate any appropriate and suitable place for the prisoner's confinement, considering—

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the [sentencing] court (A) concerning the purposes [of the prison sentence]; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2) of title 28.]

Id. Prior to the enactment of the SCA, § 3624(c) required the BOP to "assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months," of the last of his term under conditions that would facilitate his or her "re-entry into the community." 18 U.S.C. § 3624(c). Following enactment of the SCA on April 9, 2008, § 3624(c) was amended to provide that the BOP should:

> to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Id.

The BOP applies its regulations and agency policies to determine a prisoner's suitability for placement in an RRC. On April 14, 2008, the BOP issued an agency memorandum to implement the SCA that addressed the expanded prerelease placement of up to 12 months, the need for an individualized assessment, and general procedures to evaluate placements. On November 14, 2008, the BOP issued a second memorandum, which provided staff with further guidance and indicated that review for RRC placement should take

place at a prisoner's scheduled Program Review.[6]   Staff were
instructed to consider the five factors in § 3621(b) when evaluating
the prisoner's suitability for RRC placement, and those factors were
identified in the agency policy.   Program Statement 5100.08, Inmate
Security Designation and Custody Classification.   The BOP also
promulgated new rules, see 28 C.F.R. §§ 570.20–570.22.   Section
570.21 now provides that "inmates may be designated to community
confinement during the final months of the inmate's term of
imprisonment, not to exceed twelve months."   Amended § 570.22
provides:

> Inmates will be considered for pre-release community
> confinement in a manner consistent with 18 U.S.C. section
> 3621(b), determined on an individual basis, and of
> sufficient duration to provide the greatest likelihood of
> successful reintegration into the community, within the
> time-frames set forth in this part.

28 C.F.R. § 570.22 (2008).   Nothing in the SCA indicates a
Congressional intent to impose any limitations or restrictions on
the BOP's authority with regard to RRC placement.   Before and after
passage of the SCA, courts have repeatedly rejected arguments that
the statutory language entitled inmates to a particular amount of
time in an RRC.   See e.g., Zamarripa v. Peterson, 105 Fed.Appx. 253,
254 (10th Cir. 2004)(unpublished)(quoting Prows v. Federal Bureau of
Prisons, 981 F.2d 466, 469 (10th Cir. 1992), cert. denied, 510 U.S.

---

[6]      The second BOP memorandum, issued November 14, 2008, provided that
"Bureau experience reflects inmates' pre-release RRC needs can usually be
accommodated by a placement of six months or less" and that "[s]hould staff
determine an inmate's pre-release RRC placement may require greater than six
months, the Warden must obtain the Regional Director's written concurrence before
submitting the placement to the Community Corrections Manager."   See Garza, 596
F.3d 1202–03.   It also provided that "RRC placement beyond six months should only
occur when there are unusual or extraordinary circumstances justifying such
placement, and the Regional Director concurs."   On June 24, 2010, the BOP issued
a new memorandum that no longer requires approval by the BOP regional director for
RRC placements longer than six months.

830 (1993)("[n]othing in § 3624(c) indicates any intention to encroach upon the [BOP's] authority to decide where the prisoner may be confined during the pre-release period")); see Henderson v. Davis, 2010 WL 4627802, *3 n. 3 (D.Colo. Nov. 8, 2010)(unpublished). It necessarily follows that the court's review in this matter is quite limited.   Where the BOP properly followed the statutory guidelines and related agency regulations and policies in making the RRC placement decision, the Court may not second guess the BOP's substantive decision.   See Fournier v. Zickefoose, 620 F.Supp.2d 313, 318 (D.Conn. 2009).

Article III, § 2, of the Constitution allows federal courts to review only actual cases or controversies, so that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Ariz., 520 U.S. 43, 67 (1997)(quotations omitted).   This case or controversy requirement means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990); see Powell v. McCormack, 395 U.S. 486, 496 (1969);("[I]f events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed."); Spencer v. Kemna, 523 U.S. 1, 7 (1998); Green v. Haskell County Board of Comm'rs, 568 F.3d 784, 794 (10th Cir. 2009)("If, during the pendency of the case, circumstances change such that [a party's] legally cognizable interest in a case is extinguished, the case is moot.")(internal quotations omitted).   "[T]he existence of a live

case or controversy is a constitutional prerequisite to federal court jurisdiction." McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996); Lewis, 494 U.S. at 477 (Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live controversy, mootness is a jurisdictional issue.); Preiser v. Newkirk, 422 U.S. 395, 401 (1975)(a federal court no longer has jurisdiction over a case that has become moot); Hall v. Beals, 396 U.S. 45, 48 (1969)(The federal court lacks jurisdiction to consider any case that has "lost its character as a present, live controversy."); Garcia v. Bd. of Educ., 520 F.3d 1116, 1123 (10th Cir. 2008). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it'." Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)(quoting Mills v. Green, 159 U.S. 651, 653 (1895)); Spencer, 523 U.S. at 18.

## DISCUSSION

Having reviewed all materials filed by Mr. Lanni under the foregoing standards, the court finds that this action should be dismissed for the reasons stated in the screening order and those that follow.

## NON-HABEAS CLAIMS

In its screening order, the court found that petitioner's claim of being denied effective prison administrative remedies as well as

access to the courts were not grounds for habeas relief under §
2241. Petitioner was advised that if he decided to proceed with
these claims, he must file a civil rights complaint upon court-
provided forms and satisfy the filing fee for a civil action of
$350.00. Mr. Lanni subsequently submitted an Amended Petition
rather than a civil complaint, and paid the filing fee for a habeas
corpus action of $5.00. Accordingly, any of Mr. Lanni's claims that
are not habeas in nature are dismissed from this action, without
prejudice.

## MOOTNESS

The court found in its screening order that Mr. Lanni's own
exhibits refuted his claim that the BOP had not considered the five
statutory factors in determining the length of his RRC placement.
Those exhibits also plainly show that Mr. Lanni received
individualized consideration. None of the numerous arguments or
sparse factual allegations in petitioner's subsequent filings
convinces the court otherwise. Because the record shows that
petitioner was given the requisite individualized evaluation under
the statutory factors, and that is the only relief to which he would
be entitled, the court finds that this matter is moot. See Delpit
v. Sanders, 2008 WL 5263825, *2 (C.D.Cal.
2008)(unpublished)(petitioner's receipt of a CCC placement decision
under the Second Chance Act and based on application of the five
factors of Section 3621(b) rendered his habeas petition moot).
Furthermore, Mr. Lanni requested his immediate transfer to an RRC
and to Bastrop, Texas, and it appears from his current location that
he has been transferred to the Houston RRC so that this requested

relief could no longer be awarded.  As a consequence, this court has lost jurisdiction.

## FAILURE TO EXHAUST

Even if this court did not lack jurisdiction due to the mootness doctrine, it would find that this action must be dismissed without prejudice for failure to show exhaustion.  Mr. Lanni changed his main claim in his Amended Petition and added some claims.  He again argues that he should be excused from exhausting.  However, he still has not met his burden of showing that he properly and fully exhausted the available administrative remedies on the claims raised in his Amended Petition.  Petitioner's own exhibits indicate that in November 2010 he filed a grievance seeking reconsideration of the 180-day placement decision that was denied the next day.  Petitioner does not show that he appealed Puckett's response on this grievance. Petitioner then gave a "plan" or brief to Puckett in December 2010, and his brief and a grievance were submitted by him in January 2011. He received an administrative response denying both these grievances on March 8, 2011.  He executed his federal petition six days later on March 14, 2011.  Petitioner makes no effort to show that he attempted to appeal the March 8, 2011 decision to the Warden after waiting a sufficient time for a response.  Nor does he show that he properly appealed this response to the Regional Director, and finally to the BOP Central Office.  His conclusory notation that the appeal time was allowed to run before the response was received, is not sufficient to show that subsequent administrative appeals would have been ineffective.  An inmate must exhaust his administrative remedies by "using all steps that the agency holds out, and doing so

properly." <u>Woodruff v. Wiley</u>, 365 Fed.Appx. 951,  953 (10th Cir. 2010)(citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 90,(2006)(quotations omitted)).  While Mr. Lanni attempted in many ways to obtain a longer RRC placement, he does not show that he carefully followed the four-tier prison remedy process to present the claims raised in his Amended Petition.

The court has considered petitioner's "Supplement Memorandum to Support § 2241 Facts" (Doc. 8), in which he again argues that the Supreme Court in <u>Bock</u> ruled that exhaustion is not a pleading requirement.  This argument is without legal merit.  The Supreme Court's holding in <u>Jones v. Bock</u>, 549 U.S. 199 (2007), that the failure to exhaust administrative remedies is an affirmative defense to be raised by defendant, was decided under the Prison Litigation Reform Act, which does not apply to federal habeas proceedings. Nothing in <u>Jones</u> prohibits the sua sponte dismissal of a habeas corpus petition on exhaustion grounds.

**FAILURE TO STATE CLAIM**

Even if petitioner had cleared the mootness and exhaustion hurdles, the court would dismiss this action for failure to state a claim under § 2241.  Mr. Lanni states that "the crux of (his) entire claim is just to be released to the RRC center a few weeks prior to what is currently scheduled" so he can have the benefit of treatment to which he is entitled.[7]  However, none of his arguments or

---

[7]      Petitioner raises numerous claims in his Amended Petition but not in an organized fashion, such as by numbering and listing each claim followed by the facts in support.  The court attempts to summarize the claims that appear to be presented within his rambling legal arguments: (1) he did not receive individualized consideration and review under the statutory factors as required by 18 U.S.C. § 3621(b); (2) only after he challenged the initial RRC decision, "did the prison staff produce a March 8th, 2011 letter," (3) the decision on his

allegations establish that he is legally entitled to have this court order that he be provided with additional time in an RRC.

The court has considered petitioner's many allegations and arguments, and briefly comments upon some. Many of petitioner's arguments are made to support his contentions that the BOP gave no individualized consideration and instead pre-determined that every person in the RDAP would get exactly 180 days. He argues that the BOP is, in effect, applying a 180-day maximum that is based on the 180-day maximum in the 13-year old BOP policy 7310.04, the 1998 version of § 3624(c), and the "pre-2nd chance act" version of 28 C.F.R. 570.21. He also argues that there is no requirement in § 3621(b) that an inmate must show "extraordinary or compelling re-entry needs" in order to obtain an RRC placement greater that 180-days. Even assuming that petitioner did not receive full, proper review on November 5 or 6 or even until after he filed his January 2011 grievance, it nevertheless is clear from his exhibits that before he filed this federal action he had received individualized review under the statutory factors. The fact that he received individual review based on the statutory factors precludes any right to relief in federal court based upon these claims. "In Ciocchetti, the petitioner argued," as Mr. Lanni does here, that the BOP had a policy of categorically denying inmates' requests for transfers to RRCs. Ciocchetti, 358 Fed.Appx. At 24. The Tenth Circuit

RRC placement was predetermined at a time when the case manager lacked the requisite information; (4) the BOP used a "pre-determined, pre-fixed" term of RRC placement for "an entire category of inmates" that violated the language of § 3621(b) and his constitutional rights; (5) the decision as to his RRC placement was based upon policy statements that "have long been superceded by law" and were inconsistent with current law; (6) the March 8, 2011 letter was an attempt to cover-up the improper manner in which his request for RRC placement was determined; and (7) in making his RRC placement decision, the BOP failed to consider him for incentives under 42 U.S.C. §17541(a)(2)(A).

determined that the BOP Memoranda did not conflict with the Second

Chance Act for the following reason:

> As its memoranda clearly indicate, the BOP
> recognizes its authority to place inmates in
> RRCs and/or CCCs for periods of time exceeding
> six months; instructing BOP staff to
> individually consider each request for a
> transfer based on the factors set forth in §
> 3621(b) regardless of the time remaining on the
> requesting inmate's sentence. Further, the fact
> that the regional BOP director must approve any
> inmate's assignment to a RRC or CCC which is
> greater than six months in duration, is of no
> consequence because this requirement in no way
> demonstrates a policy of categorical denial.

Id.   In Bun v. Wiley, 351 Fed.Appx. 267, 268 (10th Cir.

2009)(unpublished), the Tenth Circuit rejected a similar challenge

to the Memoranda:

> Bun's argument that the new regulations are
> invalid also lacks merit.  He contends that two
> memoranda concerning the new regulations must
> be invalidated "because they conflict with
> Congressional intent in enacting [18 U.S.C. §§
> 3621(b) and 3624(c)].". . . Before granting an
> RRC placement greater than six months, BOP
> staff are required to obtain the permission of
> the Regional Director.   Contrary to Bun's
> contentions, this requirement does not run
> afoul of § 3624(c).

Id.

Petitioner cites language in 28 C.F.R. §§ 570.20-570.22.  These

provisions were amended after passage of the SCA, to provide that

placement in an RRC is not to exceed 12 months and that inmates will

be considered for pre-release community confinement "in a manner

consistent with" § 3621(b), "determined on an individual basis, and

of sufficient duration to provide the greatest likelihood of

successful reintegration into the community" within the provided

time-frames.   This language tracks with rather than violates the

pertinent statutory provisions.

Petitioner claims that he should be allowed to complete his final phase of RDAP, the Transitional Drug Abuse Treatment (TDAT), apart from the prison population and in a community-based program. He cites 28 C.F.R. § 550.53(a)(3). Nothing in this rule regarding successful completion of the RDAP (Residential Drug Abuse Treatment Program) entitles an inmate to be transferred to an RRC immediately after having completed the "unit-based component" of the RDAP. Petitioner ignores the other provision in this rule that specifically requires an inmate's participation in "follow-up services" when there is time between completion of the unit-based component and transfer to an RRC. 28 U.S.C. § 550.53(a)(2). Petitioner also cites BOP Program Statement 5330.11 § 2.5.1(b)(3), which appears to have the same content as § 550.53.

Petitioner's citation to §550.54(a)(1)(ii), which allows institutions to offer incentives for satisfactory RDAP participation including "consideration for the maximum period of time" in an RRC, does not establish his entitlement to any of the incentives listed. The language of § 550.54 is entirely permissive. In any event, under current BOP policy, Mr. Lanni was considered for the maximum period of time.

Petitioner complains that the findings of the BOP appear to paint him as a model prisoner and yet he is denied a longer RRC placement. There is no showing that the RRC program was created as an entitlement for a prisoner with good conduct.

Petitioner argues that the decision in his case was inconsistent with the statutory factor that requires consideration of any statement by the sentencing court. He seeks an immediate transfer to Bastrop, while he "is waiting for bed space" at the RRC

18

in Houston.   He alleges that the sentencing judge requested the closest prison possible to Houston and that his judgment and commitment order specifically provided "institution recommendation Bastrop Texas."   However, the sentencing court's recommendation was not binding on the BOP because the authority to designate the place of a prisoner's confinement rests with the BOP.   18 U.S.C. § 3621(b).

In sum, the court finds nothing in the statutory language or the BOP's policies cited by petitioner supports his claim of entitlement to a longer period in an RRC than six months.   It is clear that Mr. Lanni is not entitled to habeas corpus relief based on a claim that his sentence is being executed unlawfully.   For all the foregoing reasons, the court finds that Mr. Lanni's petition for habeas corpus relief fails to state a claim.   All his requests for relief, including for earlier placement in an RRC and for the court to review the placement decisions of all RDAP inmates, are denied.

The court has considered petitioner's request for "a reasonable reimbursement of expenses and legal work" for this case, and finds it should be denied.   Petitioner is not an attorney, and having represented himself is not entitled to attorney fees.   Moreover, he has not prevailed.

**PENDING MOTION**

The court has considered petitioner's Motion for Oral Hearing (Doc. 9).   Petitioner requests "to be present under sworn oath" for the hearing of this case so that he may "immediately verify" the many facts, the matter can be disposed of with a proper full review of all the facts, and to "bring finality."   He feels that an oral

hearing would "immediately get to the bottom" of any disparity between his facts and those of respondents.  There is no right to a hearing with oral argument in a federal habeas corpus proceeding.  Mr. Lanni has not met his burden of alleging sufficient facts to require a response or a hearing on his claims for habeas corpus relief.

**IT IS THEREFORE ORDERED** that petitioner's Motion for Waiver of Exhaustion, Enforcement of Law and Sanctions (Doc. 5) and petitioner's Motion for Oral Argument (Doc. 9) are denied.

**IT IS FURTHER ORDERED** that this petition for writ of habeas corpus, 28 U.S.C. § 2241, is dismissed and all relief is denied, without prejudice.

**IT IS SO ORDERED.**

DATED:  This 16th day of February, 2012, at Topeka, Kansas.


                                   s/RICHARD D. ROGERS
                                   United States District Judge